Good morning, your honors. My name is Rich Kertner and I'm here on behalf of the appellant Mr. Baldwin. I would like to reserve two minutes for rebuttal. Your honors, this case presents a single issue. It's pretty straightforward but it's an important issue and I suppose that issue can be stated in two parts. The first question is whether the government reached an agreement they had with Mr. if he provided assistance in the prosecution of another and that prosecution was successful, whether they would move for departure from the guidelines in this case for his sentencing. The second issue is whether the judge, the district court judge, should have had a hearing to explore this cooperation and the agreement and refused not to. So far as the agreement is concerned there's nothing in writing. Is that right? Not a written plea agreement. And I think it's because of the circumstances of this case that Mr. Baldwin was cooperative from the beginning. When he was first questioned by the agents he was cooperative. When he was arrested he was cooperative. He offered cooperation at the beginning before he changed his plea. The government was more interested in the people who were involved in production. He didn't have that information. He offered information about other people who would be in receipt of child pornography in the small town of Rangel. And at that time the government was not interested when he changed his plea. So he changed his plea after debriefing, after cooperating with the government straight to the indictment. After that the government came to him and said would you be interested in cooperating in this prosecution in state court of And he agreed. And there was a whole history here of sentencing being continued three times in order for this to take place. It did take place. Mr. Baldwin testified at a grand jury. There was a true bill. Mr. Strickland was prosecuted. And what's significant in state court is that after Mr. Baldwin testified at the grand jury, unlike federal court, that is provided in for that matter. And so there was some risk involved in Mr. Baldwin. Because of his testimony, Mr. Strickland did plead guilty and was sentenced and came back to the district court and the prosecution did not in our sense meet their agreement. Mr. Baldwin fulfilled his part of the agreement. Well, that's the problem. You say there's an agreement. What did the district court say with respect to there having been an agreement? I don't think the judge ever really addressed that. The judge merely said, I'll consider this as a 3553A factor without considering 5k1 of the guidelines and those factors. And he never had a hearing to establish whether there was this oral agreement between defense counsel and the assistant U.S. attorney. Now, Mr. Kevin McCoy, the defense counsel at the time, filed a lengthy affidavit explaining that in his mind and in Mr. Baldwin's mind, there was this agreement. And that's, I think, page 85 of the excerpts. And all the motions for continuance addressed this cooperation. They were joint motions to continue the And I think it just has to be assumed and accepted that there was this oral agreement. It was never contested by the government. Mr. McCoy filed affidavits saying we had this agreement. He based his motions to continue based on an agreement. The government never disputed that there was an oral agreement, never filed their own affidavits. And it was only after Mr. McCoy alleged that there was a breach of the agreement and bad faith that there was, that the government finally got some information from the district attorney in Juneau on the prosecution of that case. So it's our position that the district court should have had a hearing to flesh out these issues since they're not really disputed. The fact that there is an oral agreement between Mr. Baldwin and the government is really not disputed. It's all, it's their basis for denying or refusing to file a motion was that they did not feel it was substantial, but they don't explain why it isn't. Well, the district court did take cooperation into account in the sentence, did he not? He did take it into account into the sentence under what he called 3553A. One of the factors. He expressly considered that, did he not? No, I would say no, because under 3553A, the different factors you could consider should be the offense. The cooperation is not involved with the offense. It's not under that factor. And in fact, the reasons the government gave for not filing a 5K1 motion is under, is in the description of the offense itself. It's not under the character, the background of the defendant. And it would come under 3553A that deals with proper sentencing guidelines. The guidelines to be properly considered by the district court needs to address the factors in 5K1.1 and those five factors. And those five factors, including the risk to Mr. Baldwin, the timeliness, the truthfulness, they were really never, ever addressed by the government or by the district court. And this is why we have argued that there should have been a hearing, that the judge should have considered the cooperation under those factors and never did. And that's the whole basis of this appeal is that we feel that the government should have that hearing, should consider those five factors, and then come in with the proper guideline analysis in order to be part of the 3553A analysis. Well, the 5K.1 is now out the window after Booker, right? No. Because still, even though the guy had entered advisory, they were one of the sentencing factors. Even though... And you're suggesting he did not take it into account adequately as a factor. That's correct. I'm sorry. I thought the district court said that this was not a case in which there was any agreement. No. I think that what they said, there was not a... The reasons the government... What I read the district court saying is that the government... The defense has not proven that there was an unconstitutional motive in not filing the motion. To me, that assumes that there was an agreement, but that the denial by the government of filing the motion was not based on an unconstitutional motive. I think that's what the district court stated very briefly without addressing the 5K.1.1 factors. And so I think it was assumed, to me, looking at the entire record, it was always assumed that there was this oral agreement between Mr. Baldwin, defense counsel, and the government. The terms of which were never really pinned down very well. No. Except... And that's part of the problem. I mean, in contract law, part of the requirements for an agreement is you have an understanding, a mutual understanding, where the two sides see the same thing, of the agreement. And the government has argued in its answering brief that, in fact, you haven't argued to the district court that there was an agreement, because the affidavit spoke of an expectation of the government filing a motion, but no specific reference to an agreement. So this all seems sort of ephemeral, exactly what it was. What were the terms of this agreement? Well, and that's the thing is, I think it has to be implied that, as a basis of this agreement, that there would be at least fair consideration by the government about whether this was substantial assistance. And they never gave it any kind of consideration as far as this record is concerned. No reasons that go with the... Well, I mean, the facts were in front of the district court with regard to what your client had done, and the district court acknowledged those facts and said, in fact, he would give credit. I'm not sure what else can fairly be expected under the circumstances. Well, I think it could be expected that the government would evaluate and give to the court its evaluation of how significant this cooperation was. And under 5K1.1, the judge, in order to make this analysis for guidelines purposes, is supposed to be on the motion of the government. And the government didn't make that motion. And so that's the first premise, is that there was a... Okay. There was no agreement that bound the government to make that motion. Not to make the motion, but to fairly consider the motion. Now, in the other cases... Oh, is that what you're now saying, that the agreement was that the government would consider filing a motion? Well, it would fairly consider filing a motion, not arbitrarily deny the motion for no reason whatsoever. If you look at the other circuit cases after the Wade decision, they address government's decision not to file a motion based on... There was no other prosecution. There was no other arrest indictments based on the cooperation. There was not... It was only duplicate of other grand jury testimony. And there are reasons why it wasn't substantial. Here, there's no reasons given whatsoever. It's just, in our opinion... You've used your time. Thank you. You may please the court. I'm Karen Leffler, U.S. Attorney for Alaska. And I'm standing in for AUSA Audrey Wrench, who was unavailable this week. We appreciate your being here. Let me point out... We don't hear from U.S. Attorneys very often, so it's... Well, you know, you heard from the public defender, too. So, we're Alaska, and we show up whenever you need us. We threaten to arm wrestle, but we're not going to do that. Anyway, what I... Tickets to that. If I can go to the... What the issue really is before the court is, I think, the really sole issue was, did the district court judge clearly err? Judge Burgess. When on page 20 of the excerpt of record, he made the finding, it says, but I find, and I'm quoting from page 20, that you haven't established the requisite showing that there's been a bad faith on the part of the government. In fact, I think it's clear they had a rational reason for not moving for the downward departure. And, you know, not the least of which has been pointed out. And the reason I think that's the only issue, which is really not the issue, I think, that's being argued by the defense here, is because the agreement is in some sense sort of a red herring. And I want to... Could you just keep yourself closer to the mic? Yeah, I'm sorry. I didn't mean to step away. I was dealing with the size of podiums in federal court. I'm going to tell you the truth. The reason is, and I want to turn Judge Schroeder to what you were referring to in the record, which is on the excerpt of record, page 14. Right. And on the excerpt of record, page 14, what Judge Burgess noted is, again, quote, because this is not a case in which, for example, and the way I went through the record, what Mr. McCoy said is that, well, because what had happened originally is that Mr. Baldwin agreed to cooperate. Government said, we're not interested unless you can do production. But he said, well, we want to do a debrief. And there was a debrief done then. Later, and the government says, no, we're not, you know, we don't want to deal with you guy. We don't want cooperation. Later, certainly, government counsel called up and said, gee, the state wants it. You know, will you consider it? Government counsel obviously said yes. And I'm really going to the affidavit that says, you know, the government would agree to evaluate it, which is what happened because the sentencing, I'm sorry, you're on. No, go ahead. The sentencing was put off. Yeah, well, I bet there was agreement to put the sentencing off. Of course. And the defense would say, look, you know, motion, it was not opposed because if you're going to The defendant wanted to see the end of it because the best way to evaluate it is wait until you get to the end of the cooperation with the state and see, you know, how much it was. Now, how much? They were kind of stringing him along to see what he could do. Right. And the government, I don't know that it's stringing along. It's like wait until the end of the state case. I think he's by that. And the state case takes a long time. But what happens is, in fact, government counsel, and this is in, I believe, their government counsel, you know, talked to the state and then notified defense counsel that she would not be filing a 5K1 and then went to the state and got a letter and all of the cooperation was laid out in front of the court. Government provided the letter that the state counsel had written. And also there were two debriefings and there was a grand jury transcript. So we're sort of here where there wasn't any clear error by the district court judge who said, yeah, I've listened to the two of them. They're not, you know, we really have the weight in Flora's case where the only allegation is, you know, not surprisingly the defense says my guy cooperated and therefore you should give him the 5K1. And the government's position was he certainly cooperated, but we don't find it was substantial assistance, which the courts have said is solely within the discretion of the government. And that's where we are. And I really sort of put the agreement issue because of the, it's sort of a red herring getting around that. So unless there are any further questions, we'd really rely on the findings of Judge Burgess in this case. I'm sorry, lawyers always come back with one more thing after they say final. The other thing is that Judge Burgess also did not cut off anything that the defense wanted to present on this issue. Judge Burgess told them that the defense counsel that if they wanted to call Mr. McCoy at the hearing, they could. This is in the November 28th transcript. He said if you want to call him, and what Judge Burgess said is, you know, I understand the government doesn't dispute that, you know, she called up and said the state wants this, that she worked with Mr. McCoy, the public defender. I don't think there are any disputes, but go ahead and call him if you want to. If you have any other questions, I'm happy to answer them. I don't appear to be any. Thank you. Are there any questions for the federal defender? I don't appear to be any. Thank you. The case just argued is submitted for decision.
judges: Schroeder, O'scannlain, Clifton